923 F.2d 200
 287 U.S.App.D.C. 377
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
v.
FEDERAL COMMUNICATIONS COMMISSION,
 Nos. 90-1116, 90-1117.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 14, 1991.
 
 Before RUTH BADER GINSBURG, SILBERMAN and STEPHEN F. WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals were submitted on the record from the Federal Communications Commission and on the briefs of counsel. See D.C.Cir.Rule 13(i). Upon full review of the issues presented, the court is satisfied that appropriate disposition of the appeals does not warrant an opinion. See D.C.Cir.Rule 14(c). Substantially for reasons adequately stated by the Commission in the rulings on review, and as explained in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the Commission's decision be affirmed.
 
 MEMORANDUM
 
 3
 In 1981, the Federal Communications Commission (FCC) designated for hearing five mutually exclusive applications for a permit to construct an FM radio station in Ft. Walton, Florida. After a long selection process, the FCC affirmed the decision of the Administrative Law Judge (ALJ) selecting Vacationland Broadcasting Co. See Vacationland Broadcasting Co., 103 F.C.C.2d 1191 (1986), reconsid. dismissed, 3 FCC Rcd 754 (1988). The losing applicants appealed to this court, but during the pendency of the appeal Vacationland withdrew its application; on the Commission's motion, we then remanded the case to the FCC for selection of a new winner. The initial ALJ decision had ranked intervenor Juanina, Inc. second, appellant Pinnacle Broadcasting Corp. third, and appellant Da-Gon last. See Vacationland Broadcasting Co., 97 F.C.C.2d 499, 517 (ALJ 1983), aff'd, 97 F.C.C.2d 485 (Rev.Bd.1984).
 
 
 4
 On remand from this court, the Commission granted the permit to second-ranked Juanina. See Miracle Strip Communications, 4 FCC Rcd 5064 (1989). The FCC's determination rested largely on the factor of integration of ownership and management. Juanina's proposal to integrate its two owners full time into the station operation gave it an integration score of 10,000. Pinnacle's proposal scored 8,687.5, and Da-Gon's, 7,300. See id. at 5065.
 
 Minority Participation
 
 5
 Appellant Da-Gon argues that the FCC erred by following its longstanding policy of considering first the integration of management and ownership, and taking minority ownership into account only when competing proposals have similar levels of integration of owners into management. Da-Gon asks this court to direct the FCC to take minority ownership into account in all cases. Da-Gon further argues that it is irrational for the FCC to distinguish among owners who have controlling interests in a corporation based on their ownership percentage, i.e., in this case, between 73% shareholders and 100% shareholders. Da-Gon notes that the FCC treats all owners with more than a 50% stake similarly under its multiple ownership rules, and further notes that, had it structured its proposal as a limited partnership, it could have achieved a score of 10,000 by designating its minority owners as the sole general partners.
 
 
 6
 We have no warrant to disturb the FCC's policy on the treatment of minority ownership in comparative proceedings. Indeed, Congress has repeatedly instructed the FCC to continue, without change, its current minority ownership policies. See Pub.L. No. 100-202, 101 Stat. 1329, 1329-31 (1987); Pub.L. No. 100-459, 102 Stat. 2186, 2216 (1988); Pub.L. No. 101-162, 103 Stat. 988, 1020 (1989); Metro Broadcasting, Inc. v. FCC, 110 S.Ct. 2997, 3006 (1990) (Supreme Court observes that Congress has "prohibited the Commission from spending any appropriated funds to examine or change its minority ownership policies").
 
 
 7
 Nor is the FCC prohibited from drawing different conclusions from a 73% ownership interest for purposes of its multiple ownership rules on the one hand, and its construction permit proceedings on the other. Discrete issues not uncommonly call for distinct analysis. We discern no irrationality in the FCC's course. Finally, partnerships and corporations are treated differently in many areas of the law. It is these differences that lead investors to choose one form over the other. Having made their choice, investors are reasonably required to live with the consequences.
 
 Misrepresentation Charges
 
 8
 Appellant Pinnacle maintains that the FCC erred when it denied Pinnacle's petition for enlargement based on alleged misrepresentations made by Juanina. This issue arose at a field hearing for which Juanina had submitted a series of affidavits. On cross-examination, several of the affiants were asked whether the notaries public who witnessed their affidavits were actually present when the affiants signed their statements. Two of the eleven witnesses indicated no notary was present. The two notaries involved subsequently submitted sworn statements that they were present and Juanina's principal investor testified that the notaries were there.
 
 
 9
 The ALJ, who presided at the hearing and was thus able to observe the demeanor of the witnesses, concluded that Pinnacle "failed to show good cause for granting the requested inquiry." ALJ Mem.Op. and Order, FCC 83M-170 (Jan. 14, 1983). In common with the Review Board and the Commission, we find no cause to overturn the ALJ's credibility assessment in this tangential matter.
 
 Staleness of the Record
 
 10
 Pinnacle argued to the Commission, after Vacationland withdrew its application, that the record should be reopened because the passage of seven years had made the record stale. The Commission rejected this argument. Largely for the reasons stated by the FCC, we agree that Pinnacle has failed to meet the "exceptional circumstances" test articulated in Bowman Transp., Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 294-96 (1974). See Miracle Strip Communications, 5 FCC Rcd 581 (1990). Pinnacle points to nothing indicating that the passage of time has changed the significant matters affecting Pinnacle's prospects, i.e., the integration credits and Juanina's alleged misrepresentation. Additional hearings were not required in these circumstances.
 
 The FCC's Spousal Attribution Policy
 
 11
 The FCC refused to grant Pinnacle a full 10,000 integration credit because two of the four shareholders (spouses of the other two) were to work at the station only part time. Pinnacle, however, failed to raise this issue before the Commission and thus has not preserved the issue for appeal. In any event, we are unconvinced that this issue is dispositive. The Commission found that even if Juanina and Pinnacle had been evenly matched in integration credits, Juanina would still come out on top because of the local residence and civic participation of Juanina's 90% owner. See Miracle Strip Communications, 4 FCC Rcd 5064, 5067 n. 3 (1989).
 
 Conclusion
 
 12
 For the reasons set out here, and in the Commission's rulings, the FCC's decision is
 
 
 13
 Affirmed.